FILED
CLERK
12/30/2015 3:59 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

-against-

FIFTY-FIVE BOXES OF TIDE DOWNY POWDER DETERGENT SEIZED FROM EXCEL WHOLESALE DISTRIBUTORS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

THIRTEEN BOXES OF DURACELL C BATTERIES SEIZED FROM EXCEL WHOLESALE DISTRIBUTORS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TEN BOXES OF 1.75 OUNCE VASELINE PETROLEUM JELLY SEIZED FROM EXCEL WHOLESALE DISTRIBUTORS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FOURTEEN BOXES OF 3.75 VASELINE PETROLEUM JELLY SEIZED FROM EXCEL WHOLESALE DISTRIBUTORS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

APPROXIMATELY TEN THOUSAND NINE HUNDRED TWENTY-SEVEN DOLLARS AND ZERO CENTS ($10,927.00), MORE OR LESS, IN UNITED STATES CURRENCY, SEIZED FROM EXCEL WHOLESALE DISTRIBUTORS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

ONE HUNDRED FORTY-FIVE THOUSAND SIX HUNDRED EIGHTY UNITS OF 150ML CANS OF AXE BODY SPRAY IN VARIOUS SCENTS

**MEMORANDUM OF DECISION AND ORDER**
15-cv-2678(ADS)

SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FIFTEEN THOUSAND ONE HUNDRED FORTY-FOUR UNITS OF AXE DRY DEODORANT STICK SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FORTY-FOUR THOUSAND SEVEN HUNDRED THIRTY-SIX UNITS OF DURACELL AAA2 DURALOCK IMPORT BATTERIES SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

ELEVEN THOUSAND FORTY UNITS OF DURACELL 9 VOLT BATTERIES SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TWENTY-FIVE THOUSAND ONE HUNDRED FIFTY-TWO UNITS OF DURACELL C2 BATTERIES SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

SIX THOUSAND UNITS OF TIDE DOWNY DETERGENT SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

APPROXIMATELY TWENTY-SIX THOUSAND TWO HUNDRED EIGHTY-NINE DOLLARS AND ZERO CENTS ($26,289.00), MORE OR LESS, SEIZED FROM AKR, INC. ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TWO HUNDRED NINETEEN UNITS OF AXE AFTERSHAVE 100ML SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

ONE THOUSAND EIGHT HUNDRED EIGHTY-FOUR UNITS OF CHAPSTICK REGULAR REFILL 24S SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FOUR THOUSAND THIRTY-SIX UNITS OF DURACELL 9V KOREAN BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FIVE THOUSAND SEVEN HUNDRED TWELVE UNITS OF DURACELL AA 2 PACK CHINESE/ENG BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TWO THOUSAND FIVE HUNDRED NINETY-TWO UNITS OF DURACELL AA 1.5 VOLT BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

THREE THOUSAND FOUR HUNDRED FIFTY-SIX UNITS OF DURACELL AAA BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FORTY-EIGHT UNITS OF DURACELL D BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FOUR THOUSAND EIGHTY UNITS OF DURACELL AA 4 PACK CHINESE/ENG BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6,

2014, AND ALL PROCEEDS TRACEABLE THERETO;

FOUR THOUSAND EIGHT HUNDRED FORTY-EIGHT UNITS OF DURACELL AAA 2 PACK CHINESE/ENG BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

SEVEN HUNDRED SIXTY-EIGHT UNITS OF DURACELL C 2 PACK KOREAN BATTERIES SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FIVE HUNDRED SEVENTY-SIX UNITS OF ED HARDY SCENTED AIR FRESHENER SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

ONE THOUSAND EIGHTY UNITS OF GILLETTE GOOD NEWS RAZORS SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

THREE HUNDRED THIRTY-SIX UNITS OF SCOPE GREEN MOUTHWASH 250ML SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

THREE HUNDRED THIRTY-SIX UNITS OF SCOPE MOUTHWASH 44ML SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

SIX HUNDRED UNITS OF TIDE DOWNY DETERGENT POWDER 30/400 GRAMS SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS

TRACEABLE THERETO;

FOUR HUNDRED THIRTY-TWO UNITS OF VASELINE 1.75 OZ USA 24 SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TWO THOUSAND EIGHT HUNDRED EIGHTY UNITS OF VASELINE INTENSIVE CARE 100ML SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

FOUR HUNDRED TWENTY-EIGHT UNITS OF VICKS VAPORUB 25 GRAMS SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

TWO THOUSAND EIGHT HUNDRED EIGHTY UNITS OF VICKS VAPOR DROPS SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO;

and

APPROXIMATELY EIGHT THOUSAND NINE HUNDRED FIFTEEN DOLLARS AND ZERO CENTS ($8,915.00), MORE OR LESS, SEIZED FROM MANHATTAN WHOLESALERS ON OR ABOUT AUGUST 6, 2014, AND ALL PROCEEDS TRACEABLE THERETO,

Defendants *In Rem*.
-----------------------------------------------------------------------x

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Government*
271 Cadman Plaza
Brooklyn, NY 11201
     By:   Tanya Y. Hill, Assistant United States Attorney

**Law Offices of Thomas F. Liotti**
*Attorney for the Defendants* In Rem
600 Old Country Road, Suite 530
Garden City, NY 11530

**SPATT, District Judge:**

On May 11, 2015, the Plaintiff United States of America (the "Government") commenced this civil forfeiture action, pursuant to 18 U.S.C. § 2320 *et seq.*, against allegedly counterfeit items of merchandise (the "Merchandise") and related sums of money (the "Currency," together with the Merchandise, the "Defendants In Rem").

On July 29, 2015, the Defendants In Rem, through counsel for their corporate owners, filed an answer substantially denying the Government's allegations and asserting eleven individual counterclaims.

On August 19, 2015, the Government filed a motion, pursuant to Supplemental Rule G(8)(c)(i)(A) and (B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, seeking to strike the answer and counterclaims of the Defendants In Rem.

For the reasons that follow, the Government's motion is denied.

## I. Background

As will be discussed later in this opinion, the legal issue presented by this motion is relatively straightforward. However, this case comes before the Court by way of a complex and protracted history. Thus, although the Court presumes the parties' familiarity with the relevant underlying facts, the following case history is provided in the interest of a complete record.

On March 6 2014, investigators with the Nassau County District Attorney's Office ("NCDA") executed a series of search warrants at locations associated with three companies, namely: Best Price Traders NA, Inc. ("Best Price"); Universal Price, Inc. ("Universal"); and Glow Derma, Inc. ("Glow Derma," together with Best Price and Universal, the "Wholesale Companies"). Allegedly, the Government recovered tens of thousands of units of counterfeit health and beauty products from the locations.

The Wholesale Companies were owned and operated by Hamat Mullick ("Mullick") and Pardeep Malik ("Malik"). On March 21, 2014, the NCDA referred the case against Mullick and Malik to the United States Attorney's Office for the Eastern District of New York.

On July 16, 2014, Mullick and Malik were indicted on charges of violating 18 U.S.C. § 371 (conspiracy to traffic in counterfeit goods), § 2320(a)(1) (trafficking in counterfeit goods), § 2320(a)(2) (trafficking in counterfeit labels and packaging), § 2320(a)(4) (trafficking in counterfeit drugs), and § 1349 (conspiracy to commit mail fraud). The related criminal proceedings are currently pending before the Court.

However, in connection with the Government's investigation into Mullick and Malik, federal agents also identified three companies as being among several distributors who allegedly purchased counterfeit products from them, namely: AKR Corporation ("AKR"); Manhattan Wholesalers Bronx Corp. ("Manhattan Corp"); and Excel Wholesale Distributors, Inc. ("Excel," together with AKR and Manhattan

Corp, the "Distributors"). Apparently, these entities are wholesale distributors of cosmetic products.

On July 24, 2014, United States Magistrate Judge William D. Wall issued two warrants authorizing searches of certain premises known as 100 Sweenydale Avenue in Bayshore and 15-13 132 Street in College Point, Queens. These properties are owned by AKR and Excel, respectively. The objective of the searches was to seize alleged evidence, fruits, and instrumentalities of crimes including conspiracy to defraud the United States; mail fraud; conspiracy to commit mail fraud; and trafficking in counterfeit goods or services.

On August 1, 2014, United States Magistrate Judge Debra Freeman, sitting in the Southern District of New York, issued a third warrant authorizing the search of certain premises known as 1169 Oak Point Avenue in the Bronx, which is owned by Manhattan Corp.

All three warrants (the "Search Warrants"), and their supporting documentation, were filed under seal.

On August 6, 2014, the Government, through the United States Department of Homeland Security, Immigration and Customs Enforcement, and Homeland Security Investigations ("HSI"), executed the Search Warrants and seized certain currency and allegedly counterfeit merchandise from the three locations. The Court notes that the Merchandise and Currency comprising the Defendants In Rem in this case were seized pursuant to the Search Warrants.

On September 23, 2014, the Office of Customs and Border Protection, Department of Homeland Security ("CBP") commenced an administrative proceeding against the Defendants In Rem, pursuant to the Civil Asset Forfeiture Reform Act of 2000, 28 U.S.C. § 2465(b)(1)(A) ("CAFRA"). Allegedly, it sent direct notice of the administrative proceeding to all known potential claimants.

On October 14, 2014, the Distributors, by their attorney, Thomas F. Liotti, Esq., moved this Court by order to show cause for an order: (1) unsealing the Search Warrants and any supporting documentation; (2) requiring the Government to produce an inventory of the specific property seized pursuant to the Search Warrants; and (3) requiring the Government to show cause as to why the property at issue should not be returned to the Distributors.

On October 24, 2014, following a hearing, the Court issued a bench order directly that: (1) the Search Warrants and underlying documentation would remain sealed; however, (2) the Government was given until January 24, 2015 to file an indictment relating to the conduct that gave rise to the Search Warrants; (3) if no such indictment was filed, the Search Warrants would be unsealed immediately; and (4) the Government was given until October 29, 2014 to return to the Distributors all legitimate, non-counterfeit property seized pursuant to the Search Warrants.

Allegedly, on or about October 28, 2015, the Distributors, by counsel, filed Petitions for Remission or Mitigation of Forfeitures and Penalties Incurred ("Petitions for Remission"), requesting that CBP release the property and currency

seized pursuant to the Search Warrants. The Government contends that this filing constituted an explicit election by the Distributors to pursue their remedies in an administrative forum, namely the CAFRA proceeding commenced by CBP approximately one month earlier.

On December 19, 2014, the Distributors filed Supplemental Petitions for Remission.

On January 10, 2015, this Court issued a written order memorializing the bench order rendered on October 24, 2014.

On or about February 6, 2015, the Distributors filed a purported Notice of Claim, pursuant to New York General Municipal Law § 50, which asserted that the execution of the Search Warrants had constituted a violation of various state and federal laws, and alleged that the Distributors had suffered resultant damages.

On April 13, 2015, the Distributors filed a second motion in this Court, also by order to show cause, seeking an order: (1) finding the Government to be in contempt for failing to comply with the terms of the January 10, 2015 order; and (2) enforcing the terms of that order, including, but not limited to, requiring the Government to return all legitimate, non-counterfeit property seized pursuant to the Search Warrants. In a supporting declaration, attorney Liotti stated that the Government had, in fact, disclosed to them the search warrants and supporting documentation, as required. However, as of that date, no indictment had been filed, and the majority of the property seized pursuant to the Search Warrants had not yet been returned.

On April 21, 2015, in its response to the Distributors' motion, the Government asserted that it had returned all of the seized property that it considered to be non-counterfeit, and that any property retained by the Government had been deemed counterfeit by CBP.

Court conferences were held on April 22, 2015 and April 30, 2015, during which the Distributors requested an evidentiary hearing to determine whether the property seized by the Government was, in fact, counterfeit. In response, the Government informed the Court of the parallel administrative proceedings that were then underway pursuant to CAFRA. According to the Government, by requesting an evidentiary hearing, the Distributors were improperly seeking the same relief in a judicial forum as they had previously elected to seek in an administrative forum, namely, the return of the seized property and currency. The Government contended that the Court lacked jurisdiction to hold the type of evidentiary hearing requested by the Distributors during the pendency of the parallel CAFRA proceeding.

Ultimately, over the Government's objection, the Court scheduled an evidentiary hearing for May 28, 2015, the purpose of which was to determine whether the Government had been authorized in the first instance to effectuate the seizure in question – namely, whether the property at issue was, in fact, counterfeit, and whether the currency at issue represented the proceeds of a crime.

On May 11, 2015, the Government commenced the instant civil forfeiture action, seeking to forfeit and condemn the Merchandise and Currency seized

pursuant to the Search Warrants. This matter was originally assigned to United States District Judge John Gleeson.

Also on May 11, 2015, the Government, by Assistant United States Attorney Charles P. Kelly, submitted a letter to this Court expanding upon the Government's contention that the anticipated May 28, 2015 evidentiary hearing was improper.

On May 12, 2015, based on the issues raised and authorities cited in AUSA Kelly's letter, the Court cancelled the evidentiary hearing until further notice.

Also on May 12, 2015, Judge Gleeson issued a Warrant for Arrest of Articles *In Rem* (the "Arrest Warrant"). In relevant part, the Arrest Warrant: (i) directed CBP to take possession of the Defendants In Rem; (ii) directed the Government to provide notice of the civil forfeiture action to all potential interested parties by service of a copy of the Arrest Warrant and verified complaint, as well as publishing notice on a Government forfeiture website; and (iii) ordered that all persons claiming an interest in the subject property or currency were to file a verified claim either (a) within thirty-five days after being served with the Arrest Warrant and verified complaint, or (b) sixty days after the first day of publication via the Government forfeiture website.

On May 13, 2015, the civil forfeiture case was reassigned from Judge Gleeson to this Court.

On June 6, 2015, the Court issued an order, denying the Distributors' motion for an evidentiary hearing, finding that, during the pendency of the parallel CAFRA

proceeding, the Court lacked jurisdiction to determine the legitimacy of the Government's seizure.

On July 2, 2015, the Distributors took an appeal of the Court's June 6, 2015 Order, which is currently pending before the Second Circuit.

On July 9, 2015, the Government filed proof of service of the Arrest Warrant and verified complaint upon the Distributors, and their attorney, Thomas Liotti. According to the affidavit, the contents of which are undisputed, service was effectuated on May 19, 2015.

On July 10, 2015, the Government also filed an affidavit of publication, indicating that, consistent with Judge Gleeson's directives in the Arrest Warrant, notice of the civil forfeiture action had been published on an official Government website, namely, www.forfeiture.gov, for a period of not less than thirty days, from May 15, 2015 to June 13, 2015.

On July 29, 2015, the Distributors filed an answer to the verified complaint, asserting eleven counterclaims.

On August 12, 2015, the time for potential claimants to file a claim to the Defendants In Rem expired.

On August 17, 2015, the Distributors filed a verified claim, asserting an ownership and/or possessory interest in the Defendants In Rem.

Two days later, on August 19, 2015, the Government filed the instant motion, seeking two related forms of relief: (i) striking the Distributors' verified claim as

untimely; and (ii) upon striking the verified claim, striking the Distributors' answer for lack of standing.

## II. Discussion

### A. The Applicable Legal Standards

The Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules" or "Supp. R.") govern civil forfeiture actions. See United States v. Vazquez-Alvarez, 760 F.3d 193, 197 n.3 (2d Cir. 2014); United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 n.3 (2d Cir. 1999); United States v. PokerStars, 11-cv-2564, 2012 U.S. Dist. LEXIS 66021, at *5 (S.D.N.Y. May 9, 2012); United States v. Speed Joyeros, S.A., 05-cv-570, 2006 U.S. Dist. LEXIS 2470, at *5 (E.D.N.Y. Jan. 24, 2006).

Under these rules, "[a]ny person who asserts an interest' in the res that is the subject of a forfeiture action may 'contest the forfeiture by filing a claim in the court where the action is pending.'" Vazquez-Alvarez, 760 F.3d at 197 (quoting Supp. R. G(5)(a)(i)). "A person claiming an interest in property that is the subject of forfeiture proceedings must file a claim in the manner set forth in the Supplemental Rules." United States v. $164,330.00 in United States Currency, 07-cv-6822, 2009 U.S. Dist. LEXIS 131842, at *15 (S.D.N.Y. Dec. 4, 2009) (citing 18 U.S.C. § 983(a)(4)(A)). In particular, "Supplemental Rule G sets out the requirements for such a claim." Id. Relevant here, Supplemental Rule G(5) provides, in part, that, "[u]nless the court for good cause sets a different time, the claim must be filed . . . (A) by the time stated in a direct notice sent under Rule

14

G(4)(b); [or] (B) . . . no later than 30 days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site . . ." Supp. R. G(5)(ii)(A)-(B). The Court notes that these timing provisions were accurately incorporated into the Arrest Warrant, outlined above.

A putative claimant's failure to file a timely claim in accordance with the Supplemental Rules ordinarily divests him of standing to participate in the forfeiture action. See, e.g., United States v. $417,143.48, 13-cv-5567, 2015 U.S. Dist. LEXIS 117692, at *14 (E.D.N.Y. Sept. 2, 2015) ("A claimant who fails to comply with the procedural requirements of [Supplemental] Rule G(5) may lose statutory standing"); $164,330.00 in U.S. Currency, 2009 U.S. Dist. LEXIS 131842, at *15 ("A court may dismiss a claim for failure to adhere strictly to the requirements of Rule G(5)").

In this regard, "[s]tanding is a prerequisite to challenging the forfeiture," Vazquez-Alvarez, 760 F.3d at 197, and "claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court," Cambio Exacto, S.A., 166 F.3d at 526; see PokerStars, 2012 U.S. Dist. LEXIS 66021, at *6. Thus, where, as here, the putative claimant does not timely file a claim under the Supplemental Rules, the government may move to strike the claim or answer on the ground that the claimant lacks standing. See Vazquez-Alvarez, 760 F.3d at 197 (quoting Supp. R. G(8)(c)(i)(A)-(B)).

15

"[C]ourts generally 'expect claimants to adhere strictly to th[e] requirements [of Supplemental] Rule G(5),'" $417,143.48, 2015 U.S. Dist. LEXIS 117692, at *14 (quoting United States v. $27,601.00 U.S. Currency, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011)), and are authorized to dismiss a claim for failure to do so, see $164,330.00 in U.S. Currency, 2009 U.S. Dist. LEXIS 131842, at *15 (quoting United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993)). Nevertheless, courts also "have the discretion to excuse some procedural failures." $417,143.48, 2015 U.S. Dist. LEXIS 117692, at *14; see United States v. $138,381.00 in United States Currency, 98-cv-4747, 2002 U.S. Dist. LEXIS 25978, at *12 (E.D.N.Y. Sept. 19, 2002) (Report and Recommendation) (noting that "lack of statutory standing can be excused at the sound discretion of the trial judge"), adopted, 240 F. Supp. 2d 220 (E.D.N.Y. 2003); id. at *21 (noting that "a court has discretion in appropriate circumstances to depart from the strict compliance standard"); cf. United States v. 4492 S. Livonia Rd., 889 F.2d 1258 (2d Cir. 1258) ("When, as here, a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused").

In an analogous context, one a district court in this District noted that:

In deciding whether to permit such an untimely amendment, courts consider the following factors:

> [T]he time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late

16

> filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time . . . [as well as] the amount seized[.]

United States v. All Funds on Deposit at CitiGroup Smith Barney Account No. 600-0338, 617 F. Supp. 2d 103, 114 (E.D.N.Y. 2007) (quoting United States v. $125,938.62, 370 F.3d 1325, 1329 (11th Cir. 2004)); see $138,381.00 in United States Currency, 240 F. Supp. 2d at 230 ("Courts typically exercise their discretion when claimants have timely placed the court and government on notice of their interest in the property and intent to contest the forfeiture, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances").

### B. Application to the Facts of this Case

For purposes of this motion, the Government does not contest the Distributors' Article III standing. Rather, the Government contests the Distributors' statutory standing by asserting that they failed to comply with the procedures set forth in Supplemental Rule G(5). In particular, it is the Government's position that, by filing their verified claim after the expiration of the relevant time periods in the statute and the Arrest Warrant, the Distributors lack standing to oppose the forfeiture.

The Distributors do not dispute that the verified claim was untimely. Instead, they assert that the Court should exercise its discretion to permit the late filing.

Applying the legal framework outlined above, the Court finds that a sufficient basis exists for deeming the Distributors' verified claim timely *nunc pro tunc*.

In reaching this conclusion, the Court notes that, although the Distributors filed their verified claim five days late, it came more than ten months after the Distributors' initial appearance in this Court. In the intervening period, the Distributors, through counsel, brought two separate orders to show cause, Petitions for Remission in the related CAFRA proceeding, a Notice of Claim under state law, and an appeal to the Second Circuit. In each instance, the Distributors' sought substantially the same relief, namely, return of the Merchandise and Currency.

In this regard, there is no dispute that the Government was provided with notice of each of the Distributors' filings; that it responded to most, if not all; and that it has appeared at numerous court conferences to address relevant issues, including and especially the Distributors' claims to the Defendants In Rem. Under these circumstances, there can be no doubt that the Government was aware of the Distributors' alleged interest in the Defendants In Rem substantially in advance of the untimely filing of the verified claim. As a result, in the Court's view, the Government cannot plausibly claim that it has been, or will be prejudiced by the late filing.

In support of the instant motion, the Government emphasizes one particular factor, namely, the reasons proffered by the Distributors for the delay. In this regard, the Government asserts that the Distributors "have not offered any reason

for their failure to file a timely claim." Govt. Memo of Law at 6. In addition, the Government cites district court decisions from other jurisdictions that it claims stand for the proposition that an untimely claim may be stricken where the putative claimant's reasons for delay are insufficient to establish excusable neglect. See Gvt. Memo of Law at 5-6 (citing United States v. 2010 Dodge Challenger, 12-cv-2222, 2013 U.S. Dist. LEXIS 101101 (C.D. Ill. July 19, 2013); United States v. $6,826 in United States Currency, 09-cv-279, 2010 U.S. Dist. LEXIS 110087 (D. Vt. Oct. 14, 2010)).

However, assuming *arguendo* that the Distributors lack a compelling reason for their failure to timely file a claim, the Court is of the view that this factor is outweighed by others, such as: (i) whether the Distributors advised the Court and the Government of their interest in the Defendants In Rem before the claim deadline; and (ii) whether the Government would be prejudiced by allowing the late filing.

Given the extensive history of this case, throughout which the Distributors have consistently maintained an ownership and/or possessory interest in the Defendants In Rem; and in light of the judiciary's longstanding preference for resolving controversies on the merits, see, e.g., Gesualdi v. Quadrozzi Equip. Leasing Corp., 13-cv-3018, 2015 U.S. App. LEXIS 19221, at *5 (2d Cir. Nov. 2, 2015) ("We have a strong preference for resolving disputes on the merits"); this Court is of the view that the Distributors' five-day delay in filing a verified claim should not operate to divest them of substantive rights in the subject property, nor should it

bar them from contesting the forfeiture on the merits. Therefore, the Court exercises its discretion to permit the late filing. Accordingly, the Government's motion to strike the Distributors' verified claim and answer, based on lack of standing, is denied in its entirety.

It is **SO ORDERED**

Dated:      Central Islip, New York
              December 30, 2015      */s/ Arthur D. Spatt*
                                               ARTHUR D. SPATT
                                               United States District Judge